UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT C. SMITH,

                Plaintiff,

v.

B. ZAVODNY, et al.,

                Defendants.

CASE NO. C10-5188BHS

ORDER GRANTING IN PART AND RESERVING RULING IN PART ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Dr. Clifford Johnson ("Johnson") and Sergeant Brian Zavodny's ("Zavodny") (collectively, "Defendants") motion for summary judgment (Dkt. 99). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and reserves ruling in part on the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 11, 2010, Plaintiff Scott C. Smith ("Smith") filed an amended complaint against the Defendants and also against defendants Scott Hutson ("Hutson") and William F. Paul ("Paul"). Dkt. 10.

On August 31, 2010, Paul moved for summary judgment on Smith's claims against him. Dkt. 26. On November 11, 2010, Magistrate Judge Creatura recommended

that the Court grant that motion and dismiss the claims against Paul without prejudice. Dkt. 48. On November 11, 2010, Smith filed objections to the Report and Recommendation ("R&R"). Dkt. 53. On January 12, 2011, the Court adopted the R&R and dismissed the claims against Paul. Dkt. 62.

On November 4, 2010, Hutson filed a motion for summary judgment. Dkt. 49. On March, 2011, the Court adopted Judge Creatura's R&R recommending that the Court grant the motion (Dkt. 71) and dismissed the claims against Hutson. Dkt. 77.

On March 15, 2012, Defendants filed the instant motion for summary judgment (Dkt. 99). On April 2, 2012, Smith responded. Dkt. 106. On April 6, 2012, Defendants replied. Dkt. 109.

## II. FACTUAL BACKGROUND

In 2010, Smith was an inmate at Clallam Bay Correctional Center. Dkt. 99 at 2. Smith filed suit alleging negligent treatment and seeking a court order requiring the Department of Corrections ("the Department") to provide additional treatment for a finger injury of which Smith complained. Smith alleged, in part, that Johnson, a doctor working for the Department, had failed to provide adequate treatment for Smith, and that the Department and Johnson should run additional tests and provide additional treatment. Dkt. 99 at 1-2. This case was dismissed with prejudice and Smith did not appeal (*Id.* at 2).

In the instant case, Smith reiterates the allegations of his previous case against Johnson and the Department, claiming that he received inadequate medical treatment beginning in December 2009. Dkt. 106 at 5. He alleges a First Amendment violation,

characterizing the lack of medical treatment as an act of retaliation against him for filing a state malpractice suit. *Id.* at 4. Smith admits that until December 2009, the medical attention he received was satisfactory. *Id.* at 4-5. Smith admits that until this time, Johnson was "very attentive" in his treatment of Smith's injured finger, and provided Smith with prescriptions for pain medication, a splint, and medical tape for his finger. *Id.* at 4-5.

Smith alleges that in January 2010, Johnson learned of the state malpractice lawsuit in state court against the Department, at which point the medical attention he received "dropped to zero." *Id.* at 6. He filed numerous kites requesting additional consultations with the medical staff, including an orthopedic consult and requested pain medications like Tylenol and aspirin. *Id.* at 7. Because Smith failed to sign at least two of these health service kites, these requests were denied. Dkt. 106-1 at 18. The response to one of his kites told Smith that a "prescription will be written when you sign the request." *Id.* His request for an orthopedic consult was denied. Dkt. 106 at 7. This denial was based on the Care Review Committee's ("the Committee") determination that any further treatment of Smith's finger, other than what Johnson was already providing, was unnecessary. Dkt. 111 at 2.

When Smith requested copies of this decision for appeal purposes, he was told he was required to pay applicable fees. Dkt. 106-1 at 19. When he requested a free copy, the health services response completed by Johnson informed Smith that his "demands are being handled by the attorney general's office." *Id.* at 20. Smith submitted additional kites complaining of Johnson's responses, the Attorney General's involvement, and the

need for an additional splint for his finger. *Id.* at 20-25. Johnson responded to medical requests by asking follow-up questions such as "How long have you been without a splint?" (*id.* at 22), "Has there been a new injury?" (*id.* at 23), and "Do you need to see medical?" (*id.* at 25, 26). It is not apparent from the record how, or if, Smith replied to these inquiries, aside from filing additional, similar kites. Smith filed the last of these kites on April 1, 2010. *Id.* at 25. Johnson responded by asking, "do you need to see medical?" on April 5, 2010. *Id.* On April 7, 2010, Smith was transferred to another prison. Dkt. 106 at 9.

In March 2009, Smith named Zavodny in a grievance, implicating him in a negligent tort action against the State. *Id.* at 10; Dkt. 106-1 at 26-27. On November 30, 2009, there was a "shower incident" during which Smith entered the shower and the water was turned on before Smith was ready. Dkt. 99 at 2-3. The "legal papers" he was holding became wet. *Id.* Smith alleges that Zavodny turned on the water in a deliberate effort to retaliate against Smith. *Id.* Zavodny claims that, though he remembers the "shower incident," at the time of the incident he was unaware of the lawsuit against the State, and before this he had very little interaction with Smith. Dkt. 100 at 2. In addition to the "shower incident," Smith has filed grievances in which he alleges that Zavodny has insulted Smith by using profane language (Dkt. 106-1 at 28) and failed to take Smith to the library (*id.* at 29). One grievance which Smith filed on December 3, 2009, describes an exchange between the two men during which Zavodny allegedly said to Smith "How are those grievances working out for you? Those grievances don't mean anything. You haven't seen anything yet. I'm going to show you." *Id.* at 30. Each grievance was

investigated by the correctional facility staff and in each instance, the investigation found no proof to support Smith's allegations. *Id.* at 28-30.

### III. DISCUSSION

**A. Motion to Strike**

As a preliminary matter, the Court notes that the declarations of other inmates that Smith has filed in support of his case are irrelevant, but regardless, would not change the Court's analysis of his claims even if they were considered. Because the declarants lack personal knowledge regarding Smith's particular situation, and merely describe their own experiences with the Defendants, their declarations do not bear on the case at hand. *See id* at 31-34, 37-57. Accordingly, the Court need not consider these declarations. In addition, the Court need not consider portions of Mr. Smith's declaration that contain statements made without personal knowledge.

Defendants also argue that the grievances filed by Smith that contain statements offered as evidence of the truth of what is stated should be stricken as hearsay. Dkt. 109 at 2. The only grievance that the Court needs to consider is at Dkt. 106-1 at 30. This grievance contains a statement allegedly made by Zavodny. First, this statement, if testified to by Smith, is not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence because it is a statement by a party opponent. In addition, because Smith is a pro se prisoner plaintiff entitled to some latitude by the Court, the Court will consider the hearsay statement in his grievance in deciding the motion for summary judgment as the Court expects it will be testified to by Smith at trial, and therefore will be admissible

evidence. The Court notes that it has also given Defendants latitude in this case in allowing them to file this successive motion for summary judgment.

**B.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**C.    Defendants' Motion for Summary Judgment**

Defendants seek summary judgment based on qualified immunity. Dkt. 99. Johnson asserts that he has qualified immunity because the treatment of which Smith complains, even if assumed to have occurred as Smith alleges, is not a constitutional violation and is not unlawful under any clearly established law. Dkt. 99 at 3. Zavodny asserts the same with respect to Smith's allegations. *Id*.

Government officials who are sued in their individual capacities have qualified immunity from suit absent evidence of incompetence or knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule is intended to "balance two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and the liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place. *See Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

When analyzing a motion containing a qualified immunity defense, the court considers (1) whether a violation of a constitutional right has been shown, and (2) whether a reasonable official would have recognized that his actions violated a clearly established law. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001*), overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Under *Pearson*, trial court judges have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). A plaintiff must be able to satisfy both prongs of the analysis, and absent a showing of a constitutional violation, there is no need to consider the second prong of the qualified immunity analysis. *Id*.

Here, the constitutional violation alleged by Smith is retaliation in violation of his First Amendment rights. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

### 1. Johnson

Solely for the purpose of deciding the instant motion, the Court accepts the facts as Smith alleges. The incidents of which Smith complains, however, do not violate his constitutional rights, or support the argument that Defendants retaliated against him.

As Smith admits, from November 2007 to December 2009, Johnson provided Smith with satisfactory medical attention, including examinations and prescriptions for pain medication, a splint, and medical tape for his finger. Dkt. 106 at 4-5. Though Smith was unable to get additional medical attention starting in December 2009, when he "could not obtain a finger splint, medical tape or medical information from Defendant Johnson," this commenced a month before Johnson learned of the lawsuit in January 2010. *Id.* at 5. The timing of events makes retaliation impossible, since Johnson could not have begun to retaliate against Smith before he learned of the lawsuit which Smith alleges caused the retaliation.

Additionally, the medical attention Smith sought and was denied would not constitute a violation by Johnson of Smith's constitutional rights. It was the Committee that determined that further treatment of Mr. Smith's finger, other than what Johnson had already provided, was not necessary. Dkt. 111 at 2. At this point, it was not in Johnson's discretion to continue to provide additional treatment for Smith's finger injury, as the Committee had determined that Smith's finger did not need medical attention beyond what Smith had already been prescribed. *Id.* Accordingly, Johnson's treatment of Smith following the Committee's decision does not constitute retaliation. Rather, it was a medical determination made by a committee. Smith was free to continue to file medical

kites and grievances, and did so, and there is nothing to suggest that Johnson took any action that might dissuade Smith from exercising his First Amendment rights. Because the Court concludes that there was no constitutional violation, the Court need not address the second prong of the qualified immunity analysis. Therefore, Johnson is entitled to qualified immunity and Smith's claims against him are dismissed.

### 2. Zavodny

#### a. Zavodny's Statements Regarding Grievances

In his response to the Defendants' motion, Smith alleges that Zavodny threatened Smith for using the grievance system. Dkt. 106 at 11. Smith mentions one of these threats in his declaration (Dkt. 106-1 at 4), and has included a copy of a grievance describing a specific exchange, during which Zavodny allegedly asked him "how are those grievances working out for you?" and stated "you haven't seen anything yet. I'll show you" (Dkt. 106-1 at 30). In their motion and reply, Defendants did not dispute Smith's allegations that Zavodny threatened him in this way. *See* Dkts. 99, 109.

Smith alleges that Zavodny violated his First Amendment right to file prison grievances when Zavodny threatened Smith in retaliation for his filing of several grievances. A chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 487, n. 11(1995)). The Court has noted that "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt v. Rowland,* 65 F.3d at 806 (9th Cir. 1995) (citing *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).

Looking at the first prong of the qualified immunity analysis, the Court concludes that the alleged facts, construed in the light most favorable to Smith, establish a violation of his First Amendment right to freedom of speech. Prisoners' First Amendment right to file prison grievances are of fundamental importance in preventing injustice within their respective correctional facility. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citing *Bruce v. Ylst,* 351 F.3d 1283, 1288 (9th Cir. 2003)). When an officer acts against an inmate in retaliation for having exercised that right, the officer's actions violate the Constitution and consequently fall outside the protection of qualified immunity. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995). The Court concludes that Zavodny's comments to Smith, in particular those referring to Smith's numerous filed grievances, could be interpreted as threats that would have a chilling effect on Smith's further use of the grievance system, such that Smith's First Amendment rights were violated. Having so concluded, the Court turns to the second prong of the analysis and considers whether a reasonable officer would have recognized that Zavodny's statements to Smith violated clearly established law.

"If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). To determine whether a reasonable officer would have known that Zavodny's statements to Smith violated clearly established law, the Court examines Supreme Court and Ninth Circuit law existing at the time of the alleged exchange between Smith and Zavodny, in December 2009. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). This standard is an objective one, intended to

"provide no license to lawless conduct." *Harlow*, 457 U.S. 800, 819 (1982). "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action," thus denying certain officials the protection from liability that qualified immunity would have otherwise afforded them. *Id.* The Court concludes that, based on Smith's uncontradicted allegations, in December 2009, a reasonable person would have recognized that making threats to an inmate regarding his grievances would have a chilling effect on the prisoner's use of the grievance system.

### b. **Smith's Remaining Allegations**

#### i. **"The Shower Incident"**

The "shower incident" of which Smith complains allegedly occurred when Zavodny turned on the shower before Smith was ready, in a deliberate attempt to ruin Smith's legal documents, and in explicit retaliation for Smith's filed grievances involving Zavodny. Dkt. 106 at 10-11. Having accepted the facts as alleged in Smith's response and declaration, the Court concludes that such action, made in response to and in an effort to discourage Smith's use of the grievance system, would violate his First Amendment rights. The Court then turns to the second prong of the qualified immunity analysis, and considers whether there was an established right at the time of the "shower incident" and if a reasonable officer would have recognized that Zavodny's conduct would violate such a right.

The "clearly established law" test requires more than an alleged "violation of extremely abstract rights." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 635. To put it another way, to a reasonable officer in Zavodny's situation, the unlawfulness of his actions "must be apparent." *Id*. at 640. It is not clear that by turning on the shower before Smith was ready, it was apparent, or should have been apparent, to Zavodny that he was acting unlawfully. Though Smith characterizes this paperwork as "legal papers" (Dkt. 106-1 at 2), he has failed to state with any level of specificity exactly what documents he was holding, or why he did not place them on the nearby shelf or atop the shower door where inmates regularly place personal possessions during showers (Dkt. 100 at 2).

Additionally, in claims brought by inmates alleging retaliation, the plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). Viewing the facts in the light most favorable to Smith, the Court concludes that the shower procedures are indeed tied to the legitimate penological goals of efficiency and inmate safety. *See id*.

Furthermore, the facts do not support even the possibility of retaliation, because the timing of events, as alleged by Smith with respect to the shower incidenct, would suggest that the retaliatory behavior began before Zavodny learned of the lawsuits which Smith believes prompted the Defendants to retaliate. The record indicates that the "shower incident" during which Smith's papers became wet occurred before Zavodny

learned of the lawsuit against the State. Dkt. 100 at 2. Before the "shower incident," Smith had never filed a grievance against Zavodny, and Zavodny has filed a declaration plainly stating that he had very little contact with Smith before this occurrence. *Id.* Thus, the Court concludes that the "shower incident" was not a violation of a clearly established right and therefore, Smith's claim against Zavodny based on the incident is dismissed based on qualified immunity.

### ii. Other Allegations

First, the Court considers if Zavodny's other conduct complained of by Smith violated Smith's constitutional rights. Much of Zavodny's alleged retaliatory acts, such as slamming the meal port or kicking Smith's door, simply do not rise to the level of constitutional violations. The proper inquiry when considering alleged retaliation is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (emphasis removed). In *Rhodes*, the Ninth Circuit cited a list of cases involving incidents that did rise to the level of retaliation:

> *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir.2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim); *Hines,* 108 F.3d at 269 (holding that the retaliatory imposition of a ten-day period of confinement and loss of television—justified by a correctional officer's false allegation that the plaintiff breached prison regulations—violated the First Amendment); *Pratt,* 65 F.3d at 807 ("[I]t would be illegal for [corrections] officials to transfer and double-cell [plaintiff] solely in retaliation for his exercise of protected First Amendment rights."); *Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir.1989) (holding that, if correctional officers indeed called plaintiff a "snitch" in front of other prisoners in retaliation for his filing grievances, it would violate the First Amendment).

408 F.3d at 568. Here, the Court concludes that Zavodny's conduct of which Smith complains, with the exception of the threats involving the grievances discussed above, simply does not rise to the level of this objective standard.

### 3. Administrative Remedies

As stated above, the Court has concluded that Smith's only potentially surviving claim involves Zavodny's statements made to Smith that were included in a grievance he filed as an exhibit to his response to Defendants' motion (*see* Dkt. 106-1 at 30). The current record before the Court does not indicate whether Smith fully exhausted his administrative remedies with respect to this particular grievance. As the Court stated at the Pretrial Conference held April 30, 2012, it will wait for additional briefing from both parties before making a final ruling on the motion regarding the exhaustion of administrative remedies on the one remaining claim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 99) is **GRANTED in part** and the Court **RESERVES RULING in part** as discussed herein.

Dated this 30th day of April, 2012.

BENJAMIN H. SETTLE
United States District Judge